**In the Matter of Richard C. HAYDEN, Debtor.**

**No. 10–10895–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

July 6, 2012.

Herbert C. Broadfoot, II, Ragsdale, Beals, Seigler, Patterson & Gray, LLP, Atlanta, GA, for Debtor.

## *ORDER*

W. HOMER DRAKE, Judge.

The Federal Deposit Insurance Corporation (hereinafter the "FDIC"), as receiver for Community Bank of West Georgia (hereinafter the "CBWG"), asserts a claim against Richard Hayden (hereinafter the "Debtor") in connection with a failed bank and believes that insurance coverage is available to satisfy its claim. Accordingly, the FDIC asks the Court to modify the discharge injunction so it can name the Debtor as a defendant in a suit to establish liability for purposes of seeking payment from the insurer, Traveler's Companies, Inc. (hereinafter "TCI"). The Debtor opposes the Motion. This matter is a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 1334; 157(b)(2)(O).

### FINDINGS OF FACT

On March 8, 2010, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Court granted the Debtor's discharge on January 5, 2011. Prior to the petition date, the Debtor was an officer of CBWG, a failed bank. The FDIC, as receiver for CBWG, intends to file a suit against the Debtor and other former officers and directors for negligence and gross negligence. The FDIC submits that an insurance policy issued by TCI would cover the costs of the Debtor's defense, as well as any liability assessed in such a suit. The Debtor insists that the

policy language would exclude coverage for any such liability because the Debtor cannot be found "legally obligated" for payment of any amount, since all prepetition claims against him were discharged in his Chapter 7 bankruptcy case.

The policy at issue includes a Bankers Professional Liability Insuring Agreement, under which the insurer has a duty to defend claims brought against an insured person for either a "Lending Act" or a "Professional Services Act."[1] Specifically, the policy provides:

> If the Duty of the Insurer to Defend is selected as set forth in the Declarations under an Insuring Agreement made part of this Policy, the Insurer shall have the right and duty to select defense counsel and defend any Claim covered by such Insuring Agreement under this Policy. * * * The Insurer's duty to defend Claims shall apply even if any of the allegations are groundless, false or fraudulent and shall only obligate the Insurer to pay Defense Costs.

Policy, General Terms, Conditions and Limitations. The policy defines "Claim" to include:

> (a) a written demand against any Insured for monetary damages or non-monetary relief; (b) a civil proceeding against any Insured commenced by the service of a complaint or similar pleading; (c) a criminal proceeding against any Insured commenced by a return of any indictment or information; (d) an arbitration proceeding against any Insured, or a formal administrative or regulatory proceeding against any Insured Person . . .; (e) a written request received by any insured to toll or waive a statute of limitations, relating to a potential Claim described in (a), (b), (c), or

(d) above; or (f) solely with respect to Fiduciary Act, any fact-finding investigation of any Insured by the Department of Labor or the Pension Benefit Guaranty Corporation; on account of a Wrongful Act.

Policy, General Terms, Conditions and Limitations, Definitions. A "Wrongful Act" is defined to include certain acts covered by the various insuring agreements "but only to the extent that coverage is granted for such act pursuant to an Insuring Agreement made part of" the policy. *Id.*

The policy also provides that the insurer will pay "on behalf of the Insured Persons Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period, the Automatic Discovery Period, or, if exercised, the Additional Extended Discovery Period, for a [Lending Act or Professional Services Act] taking place before or during the Policy Period." Policy, Bankers Professional Liability Insuring Agreement. "Loss" is defined as:

> [T]he amount by which the Insureds become legally obligated to pay on account of each claim and for all Claims made against them during the Policy Period, the Automatic Discovery Period, or, if exercised, the Additional Extended Discovery Period, for Wrongful Acts for which coverage applies, including Damages, judgments, settlements and Defense Costs. Loss does not include: (a) any amount for which the Insureds are absolved from payment; (b) taxes, or fines or penalties impose by law . . ., (c)

---

1. The Court assumes this would be the operative insuring agreement, as it appears to be the only agreement that would be applicable and would also include a duty of the insurer to defend.

any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower; (d) dividends or other distributions of corporate profits; (e) any amounts that constitute inadequate consideration in connection with the Company's purchase of securities issued by any Company; or (f) matters uninsurable under the law.... Policy Declarations, Definitions. Finally, the policy states that it "shall afford coverage for Claims for the Wrongful Acts of Insured Persons made against the estates, heirs, legal representatives, or assigns of Insured Persons who are deceased or against the legal representatives or assigns of Insured Persons who are incompetent, insolvent or bankrupt to the extent that in the absence of such death, incompetence, insolvency or bankruptcy, such Claims would have been covered by this Policy." *Id.*

### CONCLUSIONS OF LAW

 The filing of a bankruptcy petition prevents temporarily the litigation of prepetition claims against a debtor. *See* 11 U.S.C. § 362(a)(1). The entry of a discharge acts as a permanent injunction against litigation for the purpose of collecting a debt from the debtor or the debtor's property. 11 U.S.C. § 727(b). "A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt." *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir.1993). Following the discharge, section 524(a)(2) enjoins "actions against a debtor," [2] *Owaski v. Jet Florida Sys., Inc.*

*(In re Jet Florida Sys., Inc.)*, 883 F.2d 970, 972 (11th Cir.1989), but section 524(e) "specifies that the debt still exists and can be collected from any other entity that might be liable." *In re Edgeworth*, 993 F.2d at 53; *see also Jet Florida*, 883 F.2d at 973 ("However, a discharge will not act to enjoin a creditor from taking action against another who also might be liable to the creditor."). Therefore, a creditor may establish the debtor's nominal liability for a claim solely for the purpose of collecting the debt from a third party, such as an insurer or guarantor. *Id.; see also In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991) ("It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity."); *In re Hendrix*, 986 F.2d 195 (7th Cir.1993) (citing *In re Shondel*, 950 F.2d 1301 (7th Cir.1991)); *In re Doar*, 234 B.R. 203, 207 (Bankr.N.D.Ga. 1999) (Kahn, J.).

 Procedurally, courts generally considered this issue in the context of a motion to reopen a case or a motion for modification of the discharge injunction. While the cases are not consistent as to whether the actual modification of the discharge injunction is a prerequisite to the continuation of the action, relief can be granted by either the a declaration that the injunction does not prevent the naming of the debtor as a nominal defendant,[3] or

---

2. Section 524(a)(2) provides as follows: "A discharge in a case under this title.... operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover, or offset any such debt as a personal liability of the debtor, or from property of the debtor...." 11 U.S.C. § 524(a)(2).

3. A request for declaratory relief must be brought by complaint, rather than by motion. *See* FED. R. BANKR.P. 7001(1). However, the Debtor appeared and litigated this matter without raising the issue. Accordingly, the Court finds that the Debtor has waived the right to insist that the FDIC proceed by adversary proceeding.

by the actual modification of the discharge injunction. *Hendrix*, 986 F.2d at 198.

 Assuming that modification is required, courts generally grant modification of the discharge injunction to allow a plaintiff to name the debtor if such a suit would not interfere with the debtor's fresh start. A suit against the debtor will generally be permitted if: (1) naming the debtor as a nominal defendant is "necessary to establish liability against a third party"; (2) "the debtor bears none of the expense of the defense"; and (3) "most important," the plaintiff may not collect any judgment from the debtor personally or from his assets. *In re Catania*, 94 B.R. 250, 253 (Bankr.D.Mass.1989). To determine whether the debtor is a "necessary party" to the litigation, the bankruptcy court considers whether: " '1) in the [party's] absence complete relief cannot be accorded among those already parties; and 2) the [party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in the [party's] absence' " will either impair or impede the party's ability to protect its interest or " 'leave anyone already a party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the [party's] claimed interest.' " *In re Loewen Group, Inc.*, 2004 WL 1853137, *25 (E.D.Pa. Aug. 18, 2004) (quoting *In re Czuba*, 146 B.R. 225 (Bankr.D.Minn.1992)).

 Here, the FDIC submits, and the Debtor does not appear to disagree, that the Debtor is a necessary party to the suit and his absence from the suit would result in the dismissal of the FDIC's claims and no recovery under the insurance policy. However, the Debtor does object to the motion because, under his interpretation of the insurance policy, the insurer will not actually be liable to pay the FDIC's claim. The Debtor cites *In re Columbia Gas*

*Transmission Corporation*, 219 B.R. 716 (S.D.W.Va.1998) in support of his position.

In *Columbia Gas*, the court refused to permit a suit for the purpose of establishing the debtor's liability and collection against the debtor's insurer. The policy provided that the insurer would "indemnify the INSURED for any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS by reason of liability imposed upon the INSURED by law." The insurer was obligated to indemnify the debtor for amounts paid only in excess of $200,000. Further, the debtor was required to pay its own defense costs. The court found that this excess insurance policy would never be triggered, since the debtor could never be "legally obligated" to pay the first $200,000, due to its bankruptcy discharge. Further, since the debtor would have been required to defend the suit, the out-of-pocket payment of defense costs would have impacted the debtor's fresh start. Accordingly, the court concluded that the case "differ[ed] markedly from the cases" cited by the putative plaintiff, such as *Jet Florida Systems* and *Edgeworth*.

The Court rejects the Debtor's reliance on *Columbia Gas*. The facts of that case are distinguishable from the facts of this case because the Debtor will not be required to pay any defense costs and, unlike the debtor who was covered only by an excess insurance provision in *Columbia Gas*, the Debtor is not required to make any payments to trigger his insurer's obligations under the policy.

 Further, to the extent, if any, that the *Columbia Gas* court did rely on the debtor's bankruptcy discharge to find that the insurer was not contractually obligated to pay the debt, the Court rejects that holding as not being in accord with the holding of *Jet Florida Systems*. The

Debtor's discharge does not eliminate the debtor's legal obligation for the debt. It simply enjoins collection activity if that collection activity is targeted at the Debtor, the Debtor's property, or property of the Debtor's bankruptcy estate. *See Doar,* 234 B.R. at 205–06; *see also Edgeworth,* 993 F.2d at 53–54 (recognizing that the discharge injunction does not prevent a tort litigant from establishing the liability of the debtor to enable the insurer to become contractually obligated to make payment).[4]

In any event, the Court is persuaded that allowing the FDIC to go forward will not prejudice the Debtor's economic "fresh start." Under the clear terms of the policy, the insurer is obligated to pay the defense costs connected with any "Claim" that is covered by the policy, even if a "Loss" is never established (or, as the Debtor asserts, can never be established due to the discharge). Even if the FDIC is permitted to name the Debtor as a nominal defendant, and it later turns out that the insurer is not liable to the FDIC for the damages, the Debtor's discharge would protect him from having to pay the damages. Accordingly, the Debtor will not be required to come out of pocket to pay for the defense of these claims, and, if the FDIC ends up with a judgment that cannot be satisfied, it will not be the Debtor's concern.

### CONCLUSION

While it is not clear that modification of the discharge injunction is required, out of an abundance of caution, the Court will grant the relief requested. Accordingly, the Motion to Modify Permanent Injunction to Permit Suit to Available Liability Insurance Policy Limits, filed by the FDIC, is **GRANTED.**

IT IS ORDERED that the Debtor's bankruptcy discharge does not preclude the FDIC from going forward against the Debtor, or his liability insurer, Traveler's Companies, Inc., in another forum, including the retention of the Debtor as a named defendant; provided, however, that any judgment obtained against the Debtor shall not be collectible out of any property of the debtor and shall not be recorded.

---

4. It is at least arguable that the policy language "legally obligated" was intended by the parties to apply to a discharged debt. First, in an analogous situation, a Georgia court held that a plaintiff's agreement not to enforce a judgment against the defendant personally would not release the insurer from its obligation to pay the plaintiff's damages, as the defendant remained "legally obligated" to pay the damages stipulated by the defendant and the plaintiff. *See Dowse v. Southern* *Guar. Ins. Co.,* 263 Ga.App. 435, 588 S.E.2d 234 (Ga.App.2003). Second, the parties included specific language stating that the policy "shall afford coverage for Claims for the Wrongful Acts of Insured Persons made against the estates [or] legal representatives ... of Insured Persons who are ... bankrupt to the extent that in the absence of such ... bankruptcy, such Claims would have been covered by this Policy."