SHAW, Justice.
Hershel Eugene Easterling, both individually and as the personal representative of the estate of Charlotte Easterling, appeals from a summary judgment in favor of Progressive Specialty Insurance Company ("Progressive") on his claims seeking uninsured/underinsured-motorist ("UIM") benefits. We reverse and remand.
Facts and Procedural History
In December 2014, Hershel and his wife, Charlotte Easterling, were injured when their vehicle was rear-ended in Chilton County by a vehicle driven by Ashley Marie McCartney. In April 2015, the Easterlings sued McCartney in the Chilton Circuit Court, alleging that McCartney behaved negligently and/or wantonly at the time of the accident. The Easterlings' complaint also named Progressive, their insurer, as a defendant and included a count seeking to recover UIM benefits from Progressive.
*769 Following the filing of the underlying action, Charlotte died.[1] Subsequently, an estate was opened and Hershel was appointed personal representative of Charlotte's estate. The trial court later granted Hershel's motion seeking to substitute himself, in that capacity, as a named plaintiff.[2]
Before trial, McCartney filed a "Suggestion of Bankruptcy" informing the trial court of her initiation of bankruptcy proceedings[3] and asserting, as a result, that, because the underlying action was allegedly "founded on a claim that a bankruptcy discharge would release," the instant case "should be ceased."[4] In response, Progressive filed a motion and supporting brief requesting a summary judgment in its favor on Hershel's UIM claim. Specifically, Progressive argued that, under Alabama law, a plaintiff may seek to recover UIM benefits from his insurer only if the plaintiff is "legally entitled to recover damages" from the tortfeasor. See § 32-7-23(a), Ala. Code 1975.[5] Progressive contended that, because McCartney's bankruptcy filing "foreclose[d] [McCartney's] legal obligation to pay debts"-including any judgment recovered against her by Hershel-Hershel was not legally entitled to recover from McCartney in excess of McCartney's own liability-insurance policy limits and, thus, Hershel's claim for UIM benefits accordingly failed as a matter of law.
In support of its position, Progressive cited, and sought to have applied, the rationale of cases in which this Court has interpreted the phrase "legally entitled to recover" to prevent the recovery of UIM benefits, including a workers' compensation *770 plaintiff's inability to recover from a co-employee and a plaintiff's inability to recover damages in excess of a statutory cap when the defendant is a governmental entity. See Kendall v. United Servs. Auto. Ass'n, 23 So.3d 1119, 1125 (Ala. 2009) ("In this case, Kendall could recover no more than the statutory maximum of $100,000 in damages from the County under § 11-93-2, Ala. Code 1975. Because Kendall had already recovered the statutory maximum of $100,000, she was no longer 'legally entitled to recover' damages from the [tortfeasors]; therefore, she could not recover UIM benefits from her insurer."), and Ex parte Carlton, 867 So.2d 332, 338 (Ala. 2003) ("The workers' compensation benefits Carlton received are his only remedy against his employer.... Therefore, Carlton is not 'legally entitled to recover damages from the owner or operator of an uninsured vehicle' as the plain language of § 32-7-23(a), Ala. Code 1975, or the clear and unambiguous provisions of his mother's State Farm policy require. Thus, he may not recover uninsured-motorist benefits under the policy."). Progressive maintained that its reasoning was not contrary to the purpose behind Alabama's statute requiring UIM coverage but that it was, instead, part and parcel of the purported condition precedent to recovery under that statute, namely, "the legal entitlement to recover from the tortfeasor the amount sought from the [UIM] carrier."
In his response to Progressive's motion, Hershel disagreed that the Bankruptcy Code operated to prevent recovery as Progressive alleged. According to him, "[t]he [B]ankruptcy [C]ode ... is not set up to protect ... [an] entity from payments which they are contractually obligated to pay through an agreement with an innocent third party." He further observed that, according to 11 U.S.C. § 524(e), "discharge of the debtor [in bankruptcy] does not affect the liability of any other entity ... for such debt." According to those principles, Hershel maintained that the authorities cited by Progressive were inapposite and that Progressive's summary-judgment motion was due to be denied.
Following a hearing,[6] the trial court granted Progressive's motion based on the holding that, because of McCartney's Chapter 7 bankruptcy filing, "[Hershel could] no longer obtain a judgment that ... McCartney would be responsible for that would invoke the UM/UIM carrier to pay." The trial court, finding "no just reason for delay," certified its judgment as final pursuant to the requirements of Rule 54(b), Ala. R. Civ. P.
Subsequently, Hershel filed a postjudgment motion requesting that the trial court "reconsider" its summary-judgment ruling. Before the trial court's disposition of that request, Hershel filed a notice of appeal to this Court.[7]
Standard of Review
" ' "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant *771 has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989) ; Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989)." '
" Prince v. Poole, 935 So.2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004) )."
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala. 2009). Additionally, " '[t]his Court reviews de novo a trial court's [application] of a statute, because only a question of law is presented.' " State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d 959, 961 (Ala. 2007) (quoting Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala. 2003) ).
Discussion
The issue presented is whether the bankruptcy discharge of a UIM defendant prevents an injured plaintiff from being able to recover UIM benefits under the plaintiff's own insurance policy. Hershel contends that the trial court erred in answering the foregoing question in the affirmative and in entering a summary judgment in favor of Progressive. More specifically, according to Hershel, the reasoning advanced by Progressive and accepted by the trial court is both contrary to the effect of a bankruptcy discharge, as indicated by the Bankruptcy Code, and unsupported by Alabama law. In support of his position, Hershel cites authority, including In re Jet Florida Systems, Inc., 883 F.2d 970, 973 (11th Cir. 1989), for the proposition that a bankruptcy discharge protects only the filing debtor and "will not act to enjoin a creditor from taking action against another who also might be liable to the creditor," including, in particular, an insurer that may be secondarily liable.
Progressive, on the other hand, argues that the trial court's ruling was correct in that it represents a "logical extension" of this Court's interpretation of the phrase "legally entitled to recover" under § 32-7-23(a) as discussed in Kendall and Ex parte Carlton, supra. Progressive maintains that this case involves a similar impediment to Hershel's recovery of UIM benefits because, it argues, the automatic stay and ultimate discharge of a tortfeasor's personal liability for damages via bankruptcy proceedings effectively "forecloses the ... legal obligation to pay debts." (Progressive's brief, at p. 3.) Progressive further contends that Jet and other cases on which Hershel relies stand only for the well settled proposition that a plaintiff may, despite the tortfeasor's bankruptcy filing, proceed against the tortfeasor's own insurer but do not hold that the plaintiff may go beyond that permitted recovery and seek UIM benefits from the plaintiff's own insurer.
" 'This Court has held that "legally entitled to recover" means that "the insured *772 must be able to establish fault on the part of the uninsured motorist, which gives rise to damages and must be able to prove the extent of those damages.' "
" Ex parte Carlton, 867 So.2d at 334 (emphasis omitted) (quoting LeFevre v. Westberry, 590 So.2d 154, 157 (Ala. 1991), quoting in turn Quick v. State Farm Mut. Auto. Ins. Co., 429 So.2d 1033, 1035 (Ala. 1983) )."
Frazier v. St. Paul Ins. Co., 880 So.2d 406, 410 (Ala. 2003) (emphasis added). See also Walker v. GuideOne Specialty Mut. Ins. Co., 834 So.2d 769, 772 (Ala. 2002) ("A motorist 'legally entitled to recover damages' under § 32-7-23 is one who presents facts sufficient to prove that the motorist was involved in an accident under circumstances that would entitle the motorist to uninsured-motorist coverage."). Applying the foregoing rationale, this Court in Kendall reiterated "that 'legally entitled to recover' under the uninsured-motorist statute 'depends entirely on the merits of the insured's claim against the tortfeasor under the laws of the state.' " 23 So.3d at 1125 (quoting State Farm Mut. Auto. Ins. Co. v. Causey, 509 F.Supp.2d 1026, 1030 (M.D. Ala. 2007) (emphasis added)).
In Ex parte Carlton, we agreed that the plaintiff was unable to carry the burden of establishing legal liability of a co-employee where the co-employee was, by statute, "immune" from liability. Similarly, in Kendall, we likewise found that the injured plaintiff had already recovered damages amounting to the maximum permitted by statute and was, therefore, not legally entitled to recover additional damages. Therefore, the plaintiffs' ability to establish the legal merits of their claims was, in some way, statutorily foreclosed. See Carlton, 867 So.2d at 337 (" '[W]hether an insured is "legally entitled to recover" depends entirely on the merits of the insured's claim against a tortfeasor under the laws of the state.' ") (quoting Hogan v. State Farm Mut. Auto. Ins. Co., 730 So.2d 1157, 1159-60 (Ala. 1998) (Lyons, J., dissenting)); Kendall, 23 So.3d at 1125 (" ' Carlton ultimately stands for the proposition that "legally entitled to recover" depends entirely on the merits of the insured's claim against the tortfeasor under the laws of the state.' " (quoting Causey, 509 F.Supp.2d at 1030 )). See also State Farm Mut. Auto. Ins. Co. v. Griffin, 51 Ala.App. 426, 431, 286 So.2d 302, 306 (1973) ("In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability."). Thus, according to our caselaw, the phrase "legally entitled to recover" refers to the insured's ability to prove the merits of the underlying tort claim against the UIM tortfeasor.
The present case, however, is different from Kendall and from Carlton. Specifically, McCartney's bankruptcy filing limits, not a determination on the merits of McCartney's liability, but, instead, Hershel's ability to collect damages from McCartney once he successfully demonstrates the merits of his claims against her.
"A primary goal of the Bankruptcy Code, to allow the 'honest but unfortunate' debtor to obtain a 'fresh start' through relief from his debts, is accomplished by the discharge. In re Krohn, 886 F.2d 123, 125 (6th Cir. 1989) (citing Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 699, 78 L. Ed. 1230 (1934) ); see also Meyers v. Internal Revenue Serv. (In re Meyers), 196 F.3d 622, 624 (6th Cir. 1999) ; In re Castle, 289 B.R. 882, 886 (Bankr. E.D. Tenn. 2003). In a Chapter 7 case, a debtor's assets are liquidated for the benefit of his or her *773 creditors, and in return, the debtor's debts, or a portion thereof, are discharged. Krohn, 886 F.2d at 125. Although entry of a Chapter 7 debtor's discharge does not extinguish the debts, once the discharge has been entered, the debtor is no longer personally liable for any of the discharged debts. Castle, 289 B.R. at 886 (quoting Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 53 (5th Cir. 1993) ); see also In re Gibson, 172 B.R. 47, 49 (Bankr. W.D. Ark. 1994).
"Once the debtor is granted a discharge, the 'discharge injunction' is triggered. Section 524 provides, in material part:
" '(a) A discharge in a case under this title-
" '....
" '(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ...[.]
" '....
" '(e) Except as [otherwise] provided in ... this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.'
" 11 U.S.C.A. § 524. 'The purpose of such an injunction is to protect the debtor from suits to collect debts that have been discharged in bankruptcy.' Hendrix v. Page (In re Hendrix), 986 F.2d 195, 199 (7th Cir. 1993). Accordingly, once a Chapter 7 debtor has been granted a discharge, any creditor holding a discharged prepetition claim may not attempt to hold the debtor personally liable for that claim."
In re Patterson, 297 B.R. 110, 112-13 (Bankr. E.D. Tenn. 2003) (footnote omitted).
In enacting the Bankruptcy Code, "Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit." Green v. Welsh, 956 F.2d 30, 33 (2d Cir. 1992) (citing 3 R. Babitt et al., Collier on Bankruptcy ¶ 524.01 at 524-16 (15th ed. 1991)). The Bankruptcy Code is not violated by the continuation of an action to permit an injured plaintiff to proceed against a discharged debtor in order to ultimately recover against an insurer. See, e.g., In re Bracy, 449 F.Supp. 70, 71 (D. Mont. 1978) ("This court specifically holds that, if an insurance company is as a matter of state law liable to a plaintiff in a personal injury action, subsequent discharge of the assured in bankruptcy does not alter the obligation of the insurance company.").
As indicated, the available authority appears to suggest a clear distinction between a plaintiff's "legal[ ] entitle[ment] to recover" based on a showing of a tortfeasor's nominal liability and the plaintiff's ability to legally collect the demonstrated damages from the tortfeasor/debtor, i.e., as Progressive notes in its brief, "[t]he plaintiff may not collect from the tortfeasor that files for bankruptcy at any time after the bankruptcy filing." (Progressive's brief, at p. 15.) See also, e.g., Gaddy v. SE Prop. Holdings, LLC, [Ms. 1140578, May 27, 2016] 218 So.3d 315 (Ala. 2016) ("After entry of the discharge, if one is granted, a discharge injunction replaces the automatic stay with a permanent injunction against enforcement of all discharged debts." (citing 11 U.S.C. §§ 362, 524(a)(2) ; In re Goodfellow, 298 B.R. 358 (Bankr. N.D. Iowa 2003) (emphasis added))); In re Mann, 58 B.R. 953 (Bankr. W.D. Va. 1986) (finding that the intent of the § 524(a) injunction is to prohibit the collection of a debt determined *774 to be a personal liability of the debtor and that the goals of bankruptcy would not be advanced by preventing a plaintiff from establishing the debtor's liability when such liability is a prerequisite to the plaintiff's recovery from her UIM insurer (emphasis added)); Hayden, 477 B.R. at 264 ("The entry of a discharge acts as a permanent injunction against litigation for the purpose of collecting a debt from the debtor or the debtor's property." (citing 11 U.S.C. § 727(b) (emphasis added))). This distinction appears to have been recognized in and, as Hershel correctly notes, the principles cited herein adopted in a majority of forums. See, Jet, supra ; Edgeworth, 993 F.2d at 53-54 (recognizing that the discharge injunction does not prevent a tort litigant from establishing the liability of the debtor in order to trigger the contractual obligation of an insurer to make payment). See also In re Hendrix, 986 F.2d 195, 197 (7th Cir. 1993) (noting the near unanimity of cases as to the principle that the discharge injunction does not extend to bar suits only nominally against the debtor because the only relief sought is against the debtor's insurer); Underhill v. Royal, 769 F.2d 1426, 1431-32 (9th Cir. 1985) (stating that a bankruptcy court has no power to discharge the liabilities of a nondebtor); Green v. Welsh, 956 F.2d 30, 33 (2d Cir. 1992) ("Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit." (citations omitted)); In re Walker, 927 F.2d 1138, 1142 (10th Cir. 1991) (noting that § 524(e)"permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when ... establishment of that liability is a prerequisite to recovery from another entity"); In re Patterson, 297 B.R. 110, 113 (Bankr. E.D. Tenn. 2003) (" '[T]he discharge of a chapter 7 debtor does not eradicate liability of third parties such as, for example, contractually responsible insurance companies.... [Instead, the] discharge injunction ... is intended for the benefit of the debtor; it is not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.' " (quoting Simpson v. Rodgers (In re Rodgers), 266 B.R. 834, 836 (Bankr. W.D. Tenn. 2001) )); In re Jason Pharm., Inc., 224 B.R. 315 (Bankr. D. Md. 1998) (permitting creditor, despite discharge of debt, to proceed nominally against the debtor in state court to establish creditor's right to recover from debtor's insurer); In re Mann, 58 B.R. at 959 ("[T]he provisions of § 524 do not prohibit the Movant from maintaining her pending action against the Debtor, who has received a discharge in Bankruptcy, in order to effectuate recovery under uninsured motorist coverage."); In re White Motor Credit Corp., 37 B.R. 631, 644-45 (Bankr. N.D. Ohio 1984) (permitting pending product-liability suits to continue despite confirmation of debtor's Chapter 11 plan on the ground that a future judgment would merely entitle the injured plaintiffs to insurance proceeds); Rowe v. Ford Motor Co., 34 B.R. 680 (M.D. Ala. 1983) (holding that, although a medical-malpractice suit could not be continued for purposes of collecting against the debtor, it could continue for purposes of determining the debtor's liability, because the plaintiff's right to recover under the plaintiff's own UIM coverage depended upon debtor's liability); Elliott v. Hardison, 25 B.R. 305, 307-08 (E.D. Va. 1982) (affirming grant of relief from automatic stay in order to permit state-court action to proceed where it was necessary for plaintiff, to recover under plaintiff's UIM policy, to establish the legal liability of the debtor as a prerequisite *775 to collecting uninsured-motorist proceeds); In re McGraw, 18 B.R. 140, 143 (Bankr. W.D. Wis. 1982) (holding that, where the plaintiffs had agreed not to seek enforcement of judgment against the debtor, the § 524 injunction could be modified and litigation could continue with the debtor as a defendant for the limited purpose of determining liability); In re Honosky, 6 B.R. 667, 670 (Bankr. S.D. W.Va. 1980) (concluding that, although any liability to the plaintiff was dischargeable and nonrecoverable against the debtor personally, the § 524 injunction did not prohibit the plaintiff from proceeding with litigation to the extent of the debtor's insurance coverage); Wilkinson v. Vigilant Ins. Co., 236 Ga. 456, 456, 224 S.E.2d 167, 168 (1976) (holding that uninsured motorist's discharge in bankruptcy did not preclude the plaintiff-insured from recovering under the UIM provision of her policy); and Bauer, supra. But see Wilcox v. Anchor Wate Co., 164 P.3d 353, 359 (Utah 2007) (declining to apply Edgeworth's rationale based on a "disagree[ment] with its premise" and "align[ing] ... with those courts holding that the proceeds of insurance policies are part of the property of the debtor's estate" (citing In re Vitek, Inc., 51 F.3d 530, 534 n.17 (5th Cir. 1995) )).
Unlike the statutory limitations in Kendall and Carlton, supra, there is nothing preventing Hershel from establishing that he is legally entitled to recover from McCartney on the merits of his claims; instead, Hershel is merely barred, by operation of McCartney's bankruptcy discharge, from actually collecting demonstrated damages from her. See In re Hayden, 477 B.R. 260, 265-66 (Bankr. N.D. Ga. 2012) ("The Debtor's discharge does not eliminate the debtor's legal obligation for the debt. It simply enjoins collection activity if that collection activity is targeted at the Debtor, the Debtor's property, or property of the Debtor's bankruptcy estate." (citations omitted; emphasis added)); Bauer v. Consolidated Underwriters, 518 S.W.2d 879, 880 (Tex. Civ. App. 1975) ("The insured's insolvency pertains only to the future collectibility of the judgment. The fact that he did not have funds available to him with which to pay a judgment entered against him would not relieve him of legal liability under the law."). Thus, Progressive is incorrect in its assertion that McCartney's bankruptcy discharge renders Hershel unable to satisfy the prerequisite of § 32-7-23 by proving the merits of his claim. (Progressive's brief, at p. 4.)
The entry of a summary judgment in the present circumstances thus appears to conflict with the legislative policies underlying both Alabama's UIM statute and the Bankruptcy Code. See 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."); In re Bracy, 449 F.Supp. at 71 ("It seems clear that it is the policy of the law to discharge the bankrupt but not to release from liability those who are liable with him." (citing 1A Collier on Bankruptcy ¶ 16.15 (14th ed. 1976))). We therefore decline Progressive's invitation to extend the rationale of Carlton and Kendall, supra, to the present circumstances. Essentially, the flaw in Progressive's logic is this: By virtue of her bankruptcy filing, McCartney has not been relieved of legal liability for the harm she caused Hershel; instead, Hershel may prove the merits of his claim but is merely prevented by law from seeking to collect damages from McCartney for that harm even after his legal entitlement to recover those damages has been established. See Hayden, 477 B.R. at 264 ("[A] creditor may establish the debtor's nominal liability for a claim solely for the purpose of collecting the debt from a third *776 party, such as an insurer or guarantor."). Any injunction against proceeding directly against the debtor, therefore, in no way extends to Hershel's own insurer.[8] See id. (explaining that, although the bankruptcy discharge enjoins further action against the debtor, " section 524(e) 'specifies that the debt still exists and can be collected from any other entity that might be liable' " (quoting Edgeworth, 993 F.2d at 53 )).
Conclusion
The trial court erred in entering a summary judgment in favor of Progressive on Hershel's UIM claim. We, therefore, reverse that judgment and remand this matter for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Parker, Murdock, Main, and Bryan, JJ., concur.
Shaw, J., concurs specially.
Sellers, J., dissents.
SHAW, Justice (concurring specially).
I concur in the main opinion, which I authored. I write specially to respectfully respond to Justice Sellers's dissenting opinion.
It is true that Ala. Code 1975, § 32-7-23(a), states that uninsured-motorist coverage extends to insureds "who are legally entitled to recover damages." Justice Sellers argues that this phrase refers to an insured's being able to "collect" damages from the tortfeasor and that here, under bankruptcy law, there can be no collection of damages from the bankrupt tortfeasor.
The caselaw identified in the main opinion, however, has read the phrase "legally entitled to recover damages" to mean, not the ability merely to collect damages from the tortfeasor, but the ability to establish fault on the part of the tortfeasor and to determine the resulting damages. This reading has a long history:
"One must, then, make a determination as to what the words, 'legally entitled to recover damages,' mean. They mean that the insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages."
State Farm Mut. Auto. Ins. Co. v. Griffin, 51 Ala.App. 426, 431, 286 So.2d 302, 306 (1973). Since Griffin, this reading of the phrase "legally entitled to recover damages" has been consistently repeated by the appellate courts of this State: Quick v. State Farm Mut. Auto. Ins. Co., 429 So.2d 1033, 1035 (Ala. 1983) ; Aetna Cas. & Sur. Co. v. Beggs, 525 So.2d 1350, 1351 (Ala. 1988) ; LeFevre v. Westberry, 590 So.2d 154, 157-58 (Ala. 1991) (citing numerous other jurisdictions with the same understanding of the same phrase); Harshaw v. Nationwide Mut. Ins. Co., 834 So.2d 762, 764 (Ala. 2002) ; Ex parte Carlton, 867 So.2d 332, 334 (Ala. 2003) ; Frazier v. St. Paul Ins. Co., 880 So.2d 406, 410 (Ala. 2003) ; Johnson v. Coregis Ins. Co., 888 So.2d 1231, 1234-35 (Ala. 2004) ; Ex parte State Farm Mut. Auto. Ins. Co., 893 So.2d 1111, 1115 (Ala. 2004) ;
*777 Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala. 2005) ; State Farm Mut. Auto. Ins. Co. v. Smith, 956 So.2d 1164, 1168 (Ala. Civ. App. 2006) ; State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d 959, 962 (Ala. 2007) ; Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 351 (Ala. 2008) ; Jenkins v. State Farm Mut. Auto. Ins. Co., 30 So.3d 414, 417 (Ala. Civ. App. 2008) ; McKinney v. Nationwide Mut. Fire Ins. Co., 33 So.3d 1203, 1210 (Ala. 2009) ; Bailey v. Progressive Specialty Ins. Co., 72 So.3d 587, 593 (Ala. 2011) ; Ex parte Safeway Ins. Co. of Alabama, 148 So.3d 39, 42 (Ala. 2013) ; and Travelers Home & Marine Ins. Co. v. Gray, 171 So.3d 3, 7-8 (Ala. 2014).
By one definition, the word "recover" means "[t]o obtain (a judgment) in one's favor," Black's Law Dictionary 1466 (10th ed. 2014). One obtains a judgment in one's favor by proving one's case in court; proving one's case-in the very general sense-is done by establishing the opposing party's fault and the resulting damages. The phrase "legally entitled to recover damages," as interpreted by the above caselaw, is not a reference to the postjudgment acquisition of money owed under an existing award of damages, but is instead the acquisition of the award in the first place.[9]
In the instant case, as the various bankruptcy authorities cited in the main opinion note, Hershel Eugene Easterling is still "legally entitled" "to obtain [a judgment] in [his] favor" for his alleged injury despite the tortfeasor's bankruptcy. He is still entitled under bankruptcy law to prove the tortfeasor's fault and his own damages; he is just not able to collect those damages from the tortfeasor.

The record suggests that there is a dispute as to whether Charlotte died of causes related to the subject motor-vehicle accident.

We express no opinion on the viability of the claims Hershel asserts on behalf of Charlotte's estate. See generally Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033 (Ala. 2005).

McCartney's "Suggestion of Bankruptcy" fails to indicate whether she sought relief under Chapter 7 or Chapter 13 of the Bankruptcy Code. See Martin v. Cash Express, Inc., 60 So.3d 236, 246 (Ala. 2010) (" ' "Chapter 7 ... allows for the complete discharge of debts and ... [in] bankruptcy under Chapter 13 ... debts [are] discounted and repaid." ' " (quoting De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir. 2003) )). Elsewhere in the record, however, it is suggested, and not disputed, that McCartney's bankruptcy petition was filed under Chapter 7.

See Gaddy v. SE Prop. Holdings, LLC, [No. 1140578, May 27, 2016] 218 So.3d 315 (Ala. 2016) ("The automatic stay prohibits the commencement or continuation of a judicial action or proceeding against the debtor or to recover a claim against the debtor that arose before the commencement of the bankruptcy case." (emphasis added)).

This Code section provides, in full:
"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him or her by the same insurer."

A transcript of the summary-judgment hearing was not included in the record on appeal. The record does, however, contain the transcript of the hearing on Hershel's subsequent postjudgment motion.

As Hershel's brief suggests and the record on appeal confirms, it does not appear that the trial court entered an order disposing of Hershel's postjudgment motion. In any event, that motion would have been, 90 days after its filing, denied by operation of law and the premature notice of appeal held in abeyance until the disposition of the motion. See Rule 59.1, Ala. R. Civ. P.; Rule 4(a)(5), Ala. R. App. P.

The Court is aware that, pursuant to Alabama caselaw, "in a direct action against an insurer for [uninsured-motorist] benefits ' "the insurer [has] available, in addition to policy defenses, the substantive defenses that would have been available to the uninsured motorist." ' " State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d 959, 962 (Ala. 2007) (quoting State Farm's brief, quoting in turn cases). However, nothing in Progressive's filing in this Court suggests that, like the municipal-damages cap and the exclusivity of the workers' compensation remedy, a bankruptcy discharge is a substantive, as opposed to a procedural, defense. See, generally, id.; Rule 8(c), Ala. R. Civ. P.

When there is some form of legal prohibition or immunity barring an action against a tortfeasor, then the insured cannot "obtain a judgment" in the first place. See generally Ex parte Carlton, 867 So.2d at 338 (holding that because the insured's claim was barred by law, he was not "legally entitled to recover damages"), and Singleton v. Burchfield, 362 F.Supp.2d 1291, 1297 (M.D. Ala. 2005) (holding that because the defendant tortfeasor had "absolute immunity" from suit, the plaintiffs were not "legally entitled to recover damages" for purposes of uninsured-motorist-insurance coverage).