**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 9, 2018**

# In the Court of Appeals of Georgia

A17A1507. FLANDERS et al. v. JACKSON.

DILLARD, Chief Judge.

Jamie Flanders's son, James Raper, died in an automobile accident. As administratrix of her son's estate, Flanders sued Dequavus Jackson, alleging that his negligent operation of a vehicle resulted in Raper's death. Jackson later filed for bankruptcy, and after Flanders obtained an order allowing her lawsuit to proceed, Jackson moved for partial summary judgment, arguing that his bankruptcy discharge limited liability to his insurance policy's available coverage. The trial court granted Jackson's motion, and on appeal, Flanders contends that the trial court erred in ruling that Jackson's bankruptcy discharge precludes her from seeking an excess judgment and in granting partial summary judgment before she could depose Jackson. For the

reasons set forth *infra*, we agree that Jackson's bankruptcy discharge does not preclude Flanders from seeking an excess judgment against him, and thus, we reverse.

Viewed in the light most favorable to Flanders (i.e., the nonmoving party),[1] the record shows that on March 29, 2015, Flanders's 16-year-old son, Raper, was a passenger in Jackson's vehicle, when Jackson lost control while rounding a curve on a road in rural Cook County at an excessive speed. After Jackson lost control, his vehicle careened off the road and flipped over, ejecting Raper from the backseat. As a result, Raper suffered fatal injuries.

At the time of the accident, Jackson and the vehicle he was driving were insured by his mother's automobile insurance policy with State Farm, which provided liability limits of $25,000 per person. And prior to filing her lawsuit, Flanders made a policy-limits demand to State Farm, which the insurer ultimately rejected. Then, on March 29, 2016, Flanders—as Raper's mother and the administratrix of his estate—filed a wrongful-death action against Jackson in the Superior Court of Cook County. Approximately two weeks later, Jackson filed an answer and discovery ensued.

---

[1] *See, e.g., Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

On July 8, 2016, Jackson—who was 18 years old and living in his mother's home at the time of the accident—filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Georgia, listing Flanders's lawsuit as a dischargeable debt. As a result, Flanders's lawsuit was automatically stayed under 11 USC § 362.[2] Notably, the bankruptcy trustee's report of possible assets included a "Possible Bad Faith Claim," which the trustee acknowledged currently had an unknown value.

Thereafter, on September 7, 2016, the bankruptcy court entered a consent order modifying the automatic stay and permitting Flanders's wrongful-death action to proceed. The order, in part, specifically provided: "Neither this Order nor any act of the Movant taken pursuant to such order, shall prejudice, impair or affect in any way any rights relating to any bad faith claim or judgment against the Debtor's insurer(s) arising in connection with the claim that is the subject of the Superior Court Action." Then, on October 27, 2016, the bankruptcy court entered an order of discharge as to Jackson's bankruptcy, which provided that most of his debts were discharged and,

_____

[2] *See* 11 USC § 362 (a) ("Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay . . . .").

thus, that creditors could not collect such debts. But the order also noted that the discharge would not "stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed the loan."

On December 12, 2016, Jackson filed a motion for partial summary judgment, arguing that his bankruptcy discharge limited his personal liability to the State Farm insurance policy's available coverage of $25,000. Flanders filed a response, arguing that the trial court should defer ruling on Jackson's motion until after he was deposed. In addition, Flanders argued that Jackson's bankruptcy discharge did not preclude her from seeking a judgment in excess of the insurance policy limits as a precursor to establishing State Farm's liability for a potential bad-faith-failure-to-settle claim.

Shortly thereafter, Jackson moved for a protective order to prevent Flanders from deposing him, in light of the criminal proceedings pending against him as a result of the accident. Flanders filed an objection, but without ruling on Jackson's motion for a protective order, the trial court granted Jackson's motion for partial summary judgment, determining that, as a result of Jackson's bankruptcy discharge (which prohibited any act to collect a judgment against the property of Jackson), "any judgment rendered in this case shall be limited to $25,000.00." This appeal follows.

1. Flanders contends that the trial court erred in granting partial summary judgment, arguing that Jackson's bankruptcy discharge did not preclude her from seeking a judgment in excess of the insurance policy limits. We agree.

In order to adequately address Flanders's contention on appeal, a brief discussion is warranted regarding the type of bad-faith claim the trial court's partial summary judgment grant implicitly precludes. As a general rule, a plaintiff does not have standing to "bring a direct action against a defendant's insurance company unless the plaintiff has obtained a judgment against the defendant that remains unsatisfied."[3] And importantly, an insurance company may be liable for "the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits."[4] Moreover, under Georgia

---

[3] *Atl. Specialty Ins. Co. v. Lewis*, 341 Ga. App. 838, 841 (1) (802 SE2d 844) (2017); *accord Capitol Indem. Corp. v. Fraley*, 266 Ga. App. 561, 563 (1) (597 SE2d 601) (2004).

[4] *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 684 (1) (580 SE2d 519) (2003); *see Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 190 (686 SE2d 93) (2009) ("If an insurer acts in bad faith in refusing to settle a personal claim against its insured within the policy limits, it may be liable for an excess judgment entered against its insured.").

law, an insured may assign a bad-faith-refusal-to-settle claim to the injured plaintiff with a tort claim against the insured.[5]

Here, in its motion for partial summary judgment, Jackson argued—and the trial court agreed—that his bankruptcy discharge precludes Flanders from seeking a judgment in excess of the $25,000 State Farm policy limits and, therefore, obviates any potential bad-faith-refusal-to-settle claim. But this argument appears to be based on a rather broad and ultimately incorrect application of the relevant bankruptcy statute, 11 USC § 524.

Tasked with interpreting statutory language, we necessarily begin our analysis with "familiar and binding canons of construction."[6] First and foremost, in considering the meaning of a statute, our charge as an appellate court is to "presume that the [legislature] meant what it said and said what it meant."[7] And toward that end,

---

[5] *See Brightman*, 276 Ga. at 684 (noting that insured assigned her claim against her insurer for its bad faith refusal to settle the personal injury action to plaintiff); *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268 (416 SE2d 274) (1992) (same).

[6] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[7] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

we must afford the statutory text its plain and ordinary meaning,[8] consider the text

contextually,[9] read the text "in its most natural and reasonable way, as an ordinary

speaker of the English language would,"[10] and seek to "avoid a construction that

makes some language mere surplusage."[11] In summary, when the language of a statute

---

[8] *See Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text." (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning. . . ." (punctuation omitted)).

[9] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___ (II) (B) (133 SCt. 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) (noting that in statutory construction cases, courts "begin with the language of the statute itself and the specific context in which that language is used." (punctuation and citation omitted)).

[10] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Holcomb*, 329 Ga. App. at 518 (1).

[11] *In the Interest of L.T.*, 325 Ga. App. at 592 (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[12]

Here, in relevant part, 11 USC § 524 provides:

(a) A discharge in a case under this title–

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

But under 11 USC § 524 (e), the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." And as relevant bankruptcy-court authority has explicitly reiterated, "[a] discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from

---

[12] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

personal liability for the debt."[13] More thoroughly explained, "[f]ollowing the discharge, section 524 (a) (2) enjoins actions against a debtor, but section 524 (e) specifies that the debt still exists and can be collected from any other entity that might be liable."[14] Consequently, a creditor may establish the debtor's nominal liability for a claim "solely for the purpose of collecting the debt from a third party, such as an insurer or guarantor."[15]

---

[13] *In re Hayden*, 477 BR 260, 265 (Bankr. N.D. Ga. 2012) (punctuation omitted); *accord In re Edgeworth*, 993 F2d 51, 53 (5th Cir. 1993); *see* 11 USC § 524 (e).

[14] *In re Hayden*, 477 BR at 264 (cleaned up); *accord In re Edgeworth*, 993 F2d at 53; *Owaski v. Jet Fla. Sys., Inc.(In re Jet Fla. Sys., Inc.)*, 883 F2d 970, 972 (11th Cir. 1989).

[15] *In re Hayden*, 477 BR at 264; *accord In re Edgeworth*, 993 F2d at 53; *see In re McLean*, 794 F3d 1313, 1322 (11th Cir. 2015) (noting that "courts have often concluded, relying in part on § 524 (e), that an action in tort brought directly against a discharged debtor is *not* barred by the discharge injunction where the sole purpose of the action is to recover against an insurer"); *In re Walker*, 927 F2d 1138, 1142 (I) (10th Cir. 1991) ("It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity."); *In re Doar*, 234 BR 203, 204 (Bankr. N.D. Ga. 1999) ("Bankruptcy law is clear and nearly unanimous that § 524 (e) does not prevent a creditor from maintaining a debtor, nominally, in a state court action for the purposes of establishing liability as a prerequisite to proceeding against a debtor's liability insurer.").

Here, in Jackson's bankruptcy discharge, the bankruptcy court ruled that creditors could not collect a discharged debt from Jackson *personally*. But, in line with the foregoing statutory and case authority, the bankruptcy court also held that its order would not "prejudice, impair or affect in any way any rights relating to any bad faith claim or judgment against the Debtor's insurer(s) arising in connection with the claim that is the subject of the Superior Court Action." Nevertheless, Jackson argues that because any debt for which a jury might find him personally liable to Flanders has been discharged, Flanders cannot seek an excess judgment but, rather, is limited to seeking the policy limit of $25,000. This contention is a nonstarter.

Jackson's argument conflates Flanders's ability to *seek* an excess judgment by prevailing in her tort claim with her ability to *collect* such a judgment from him personally. But Flanders has not asserted that she can collect an excess judgment, or any judgment for that matter, from Jackson personally. And we are not aware of any case authority—and Jackson has cited none—holding that her inability to ultimately collect such a judgment from Jackson personally precludes her from seeking it. In fact, the authority outlined *supra* counsels otherwise.[16] Furthermore, while no courts in Georgia have been charged with applying the bankruptcy statutes to the specific

---

[16] *See supra* note 15.

facts at issue here, courts in our sister state of Florida have held that "[a] defendant's discharge in bankruptcy cannot be a legal basis upon which to compel a plaintiff to accept the liability insurance policy limits."[17] Indeed, as one of those courts has astutely reasoned, "[i]f such were the case, every insurance carrier would instruct its insured to declare bankruptcy in order to limit recovery to the policy limits."[18] We find such reasoning persuasive and a faithful application of the relevant bankruptcy statutory and case authority, which allows a creditor to establish the debtor's nominal liability for a claim solely for the purpose of collecting the debt from an insurer.[19] Accordingly, we reverse the trial court's grant of partial summary judgment in favor of Jackson.

2. Flanders also contends that the trial court erred in granting partial summary judgment before she could depose Jackson. But given our holding in Division 1

---

[17] *Whritenour v. Thompson*, 145 So3d 870, 874 (Fla.2d DCA 2014); *see Camp v. St. Paul Fire & Marine Ins. Co.*, 616 S2d 12, 14-15 (Fla. 1993) (holding that an insured's bankruptcy and discharge from liability prior to exposure to an excess judgment via a tort claim, such that insured was never personally liable for any judgment, did not preclude a subsequent bad-faith-refusal-to-settle cause of action against the insurer).

[18] *Whritenour*, 145 So3d at 874.

[19] *See supra* note 16.

*supra*, reversing the trial court's grant of partial summary judgment, and the fact that the trial court did not rule on Jackson's motion for a protective order prior to granting partial summary judgment, we need not address this issue.

For all these reasons, we reverse the trial court's grant of partial summary judgment in favor of Jackson and remand this case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Ray and Self, JJ., concur.*