**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 23, 2014**

# In the Court of Appeals of Georgia

A14A0881. COPE v. EVANS.

ANDREWS, Presiding Judge.

Monette Evans sued John Cope, M.D., an orthopedic surgeon, for medical malpractice claiming that she was injured when Dr. Cope breached the applicable medical standard of care by failing to recognize and treat a staph infection in her hip joint before proceeding with hip replacement surgery. We granted Dr. Cope's application for an interlocutory appeal from the denial of his motion for summary judgment. Because we find no evidence in the record that Dr. Cope violated the applicable standard of care, he was entitled to summary judgment, and we reverse.

After Ms. Evans fell and fractured her hip, Dr. Cope performed surgery in September 2006 to repair the fracture. X-rays taken in October 2006 showed that the September 2006 surgery failed because a screw used to fix the fracture started to

come loose from the bone. After the hip repair surgery failed, Dr. Cope performed a second surgery in October 2006 in which he replaced Ms. Evans's injured hip. When Dr. Cope entered the hip during the replacement surgery, he encountered some clear yellow fluid which he testified appeared to be the result of inflamation caused by the loose screw from the first surgery. According to Dr. Cope, he saw nothing before or during the second surgery that suggested an infection was present in the hip. Nevertheless, Dr. Cope ordered a gram stain test and a culture on the fluid for the purpose of determining if bacteria might be present. The gram stain test was conducted during the surgery; the test showed no bacteria (an indication of lack of infection); and Dr. Cope completed the surgery. Four days after the hip replacement surgery was completed, the culture of the fluid grew staphylococcus bacteria indicating that, unknown to Dr. Cope when he performed the surgery, an antibiotic-resistant staph infection was present in the hip at the time of the surgery. Expert medical evidence showed that Dr. Cope knew at the time he performed the first and second surgeries that Ms. Evans was taking immunosuppressive drug therapy for a prior kidney transplant, and that this made her more susceptible to bacterial infection. Expert medical evidence also showed that, when Dr. Cope put hip replacement hardware in the hip joint during the second surgery, this had the effect of making the

existing staph infection more difficult to treat. The infection was eventually eliminated after Ms. Evans was hospitalized for about six weeks of antibiotic treatment. After Ms. Evans continued to have pain in the replaced hip, she had the hip examined in April 2008 by another orthopedic surgeon, J. Kevin Brooks, M.D. Dr. Brooks determined that the hip replacement hardware placed by Dr. Cope in the second surgery had loosened. In September 2008, Dr. Brooks performed another hip replacement surgery on Ms. Evans's hip to revise the earlier replacement surgery performed by Dr. Cope. Based on his review of Ms. Evans's medical records, Dr. Brooks's opinion was that the probable cause of the failure of the first hip repair surgery performed by Dr. Cope was the development of a staph infection; that the infection was present in the hip when Dr. Cope replaced the hip in the second surgery; and that the infection likely caused the loosening of the replacement hardware placed by Dr. Cope in the second surgery.

"[I]n order to establish medical malpractice, the evidence presented by the patient must show a violation of the degree of care and skill required of a physician. Such standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally." *Johnson v. Riverdale Anesthesia Assoc., P.C.*, 275 Ga. 240, 241 (563 SE2d 431) (2002) (punctuation and

3

citation omitted), overruled on other grounds, *Condra v. Atlanta Orthopaedic Group, P.C.*, 285 Ga. 667, 669 (681 SE2d 152) (2009). There is a rebuttable presumption that medical or surgical services were performed in an ordinary and skillful manner. *Beach v. Lipham*, 276 Ga. 302, 303-304 (578 SE2d 402) (2003). "To overcome the presumption in the typical case, the injured patient must present evidence from expert medical witnesses that the defendants did not exercise due care and skill in performing their services." Id. at 304. To prevail on a motion for summary judgment, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991); OCGA § 9-11-56. The moving party on summary judgment may carry this burden by affirmatively presenting evidence which negates an essential element of the nonmoving party's claim, or by demonstrating the absence of evidence to support an essential element of the nonmoving party's claim. *Lau's Corp*, 261 Ga. at 491.

Ms. Evans does not claim that Dr. Cope breached a medical standard of care during his performance of the first surgery to repair her hip in September 2006, nor does she claim that staph bacteria invaded her hip joint because Dr. Cope breached

a standard of care. Rather, her malpractice action is based on the claim that Dr. Cope violated the applicable medical standard of care when he failed to recognize and treat a staph infection in her hip before he proceeded with the hip replacement surgery in October 2006.

Ms. Evans argues that expert testimony given by Dr. Brooks supports her malpractice claim. Dr. Brooks and Dr. Cope both gave testimony showing that, when infection is recognized to exist before or during hip replacement surgery, the standard of care requires that replacement hardware not be placed in the infected hip; rather, the standard is to treat and eliminate known infection before placing the hardware in the hip. Dr. Cope testified that he did not see evidence of or recognize any infection in Ms. Evans's hip before or during the October 2006 hip replacement surgery, and that he placed the replacement hardware in her hip unaware that a staph infection was present. Based on his review of medical records, Dr. Brooks testified that he found no basis to conclude that Dr. Cope violated any standard of care during his treatment of Ms. Evans. Dr. Brooks found no reason to disagree with Dr. Cope's operative report on the October 2006 surgery, which noted the absence of evidence of infection. As to Dr. Cope's October 2006 surgery to replace the hip, Dr. Brooks testified that Dr. Cope used good surgical technique, including use of the gram stain test during the

5

surgery to determine if the clear yellow fluid encountered in the hip was a sign of infection. According to Dr. Brooks, the fluid could have been associated with arthritis or infection in the joint, and it was appropriate for Dr. Cope to order the gram stain test during the surgery to look for infection. Dr. Brooks testified that, based on the results of the gram stain test which showed some inflammatory cells, but no bacteria present, there was no reason for Dr. Cope not to proceed with the hip replacement surgery. Given the fact that no bacteria was detected in the gram stain test, Dr. Brooks was asked, "[I]n that situation, is it within the standard of care to proceed with the hip revision surgery?," and he responded, "Yes."[1]

Ms. Evans points out that, in addition to testifying that Dr. Cope complied with the standard of care, Dr. Brooks described his own treatment of her hip beginning in April 2008 after the staph infection had been recognized and treated. Dr. Brooks testified that, before he performed the September 2008 hip replacement surgery, he was aware that Ms. Evans had been treated for a prior antibiotic-resistant staph infection in her hip, although he did not know to what extent the infection had been

---

[1] Dr. Cope testified that he did not violate the standard of care, and two additional orthopedic surgeons other than Dr. Brooks reviewed the medical records and gave opinions that Dr. Cope did not violate the standard of care in the treatment of Ms. Evans.

treated. Prior to performing that surgery, Dr. Brooks did various diagnostic testing to look for possible infection in the hip. Ms. Evans contends that the testimony given by Dr. Brooks showing he tested her hip for infection before the September 2008 surgery in ways that Dr. Cope did not test before the October 2006 surgery was evidence showing that Dr. Cope violated the applicable standard of care before the October 2006 surgery.

Testimony from Dr. Brooks about the diagnostic testing he did for infection before the September 2008 surgery did not create a factual issue precluding summary judgment in favor of Dr. Cope. Dr. Brooks tested Ms. Evans for infection under different circumstances than those encountered by Dr. Cope. Dr. Brooks treated Ms. Evans after she had incurred a known antibiotic-resistant staph infection in her hip, and he pointed out that he did not know the extent the prior infection had been treated. Dr. Brooks made clear his opinion that Dr. Cope's treatment of Ms. Evans complied with the applicable standard of care. Moreover, Dr. Brooks did not testify that the various diagnostic testing he did was the medical standard of care under the circumstances facing Dr. Cope before the October 2006 surgery, or under the circumstances existing prior to his September 2008 surgery. The only reasonable construction which can be given to Dr. Brooks's testimony about diagnostic testing

7

he undertook prior to the September 2008 surgery is that it described his personal practice. Even assuming that Dr. Cope and Dr. Brooks treated Ms. Evans under similar conditions and like circumstances, testimony from Dr. Brooks about his personal treatment of Ms. Evans was relevant to cast doubt on his testimony that Dr. Cope's treatment of Ms. Evans complied with the standard of care. *Condra*, 285 Ga. at 669-672. But testimony about Dr. Brooks's personal treatment preferences was not evidence which, standing alone, could establish those preferences as the medical standard of care. *Dendy v. Wells*, 312 Ga. App. 309, 314 (718 SE2d 140) (2011); *Condra*, 285 Ga. at 672 (noting the difference between the general medical standard of care and the personal treatment preferences of particular physicians, and reaffirming "the principle that a mere difference in views between physicians does not by itself prove malpractice.").

Construing the facts and reasonable inferences therefrom in favor of Ms. Evan's claim, there was no expert medical evidence in the record that Dr. Cope violated any medical standard of care.[2] In the absence of any evidence that Dr. Cope

---

[2] With her amended complaint, Ms. Evans filed an expert affidavit pursuant to OCGA § 9-11-9.1 from an orthopedic surgeon, Alexander Doman, M.D., stating that, based on review of medical records, Dr. Cope violated the applicable standard of care by failing to obtain a gram stain culture to diagnose the existing hip infection, and by failing to debride and irrigate the hip after diagnosing the infection. The medical

violated a medical standard of care, Ms. Evans failed to rebut the presumption that Dr. Cope exercised due care and skill within the standard of care, and the trial court erred by denying Dr. Cope's motion for summary judgment. *Vaughan v. Wellstar Health System, Inc.*, 304 Ga. App. 596, 602 (696 SE2d 506) (2010); *Bregman-Rodoski v. Rozas*, 273 Ga. App. 835, 836-837 (616 SE2d 171) (2005); *Bowling v. Foster*, 254 Ga. App. 374, 376-377 (562 SE2d 776) (2002); *Lau's Corp.*, supra.

*Judgment reversed. McFadden and Ray, JJ., concur*.

---

records at issue and Dr. Cope's testimony subsequently provided undisputed proof that, contrary to the affidavit, Dr. Cope did order a gram stain test which showed no evidence of infection. See *Ezor v. Thompson*, 241 Ga. App. 275, 279 n.4 (526 SE2d 609) (1999) (OCGA § 9-11-9.1 affidavit based on fact proved to be incorrect is not sufficient to preclude summary judgment). Moreover, in response to Dr. Cope's motion for summary judgment, Ms. Evans stated that "plaintiff will not rely upon the Doman affidavit at trial, and does not rely upon it in this summary judgment proceeding." Dr. Doman's affidavit did not create an issue of fact precluding summary judgment.