**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 19, 2025**

# In the Court of Appeals of Georgia

A25A1283. CARTER v. DAVIS et al.

MERCIER, Judge.

In 2022, Jonathan Carter sued Jessica Davis and Korterrious Sneed for negligence relating to a three-car motor vehicle collision. The case proceeded to trial in the State Court of Bibb County, resulting in a verdict and judgment for the defense. Carter appeals, arguing that the trial court erred in failing to grant a mistrial after allowing an alternate juror to participate in deliberations. For reasons that follow, we affirm.

The record shows that the jury reached its verdict in "less than ten minutes," as calculated by the trial court. After receiving word that the jury had made its decision, the trial court asked the parties whether they had anything to discuss before

the verdict was announced. The parties responded in the negative, at which point the trial court stated:

> Okay, so I got one thing. We had a jury of 13 back there. The alternate is back in there with them. So that's my mistake. I didn't pull the alternate out. Apparently, they have a unanimous verdict anyway. So not knowing what the verdict is, what do y'all want to do?

The defendants indicated that they had no objection to the situation. Carter, however, objected, noted that "[he] asked for a jury of 12 and there was a jury of 13[,]" and moved for a mistrial. After a brief discussion, the trial court denied the motion, explaining:

> I'm going to deny the motion for mistrial. We can take the verdict and you may have some other form of relief post-verdict if you want to address it. . . . I can see a scenario where, depending on what the verdict is, there may be an argument that her presence in there or not in there didn't matter one way or the other. But we don't know what that is right now. So I apologize Mr. Carter. Again, I don't have any excuse. I should have remembered to get the alternate out. So and again, I don't know what the outcome is right now. But we're bringing the jury in with a motion for mistrial denied.

After Carter renewed his objection "to the jury[,]" the defense verdict was published in court. Rather than filing a motion for new trial, Carter moved for

reconsideration of the denial of his motion for mistrial, asserting that, under Georgia law, alternate jurors must be kept separate and apart from regular jurors during deliberations. The trial court held a hearing on the motion, at which the defendants offered testimony from the alternate juror. The alternate testified that she did not say anything while she was in the jury room during deliberations; she did not take part in the discussion; she was "quiet as a mouse[;]" she "wasn't . . . paying much attention because [she] knew [she] was the alternate[;]" and she did not participate when the other jurors voted on the foreperson and the verdict. She further testified that no one questioned why 13 people were in the jury room or indicated that her presence influenced the jury. In addition, the defendants offered "sworn statements" from seven jurors, who stated that the jury was not influenced by the alternate juror's presence. Carter objected to the admission of these "sworn statements," asserting that they were not timely produced, had not been notarized, and constituted hearsay.

The trial court ultimately denied the motion for reconsideration. In doing so, it refused to consider the "sworn statements" offered by the defense, finding them to be untimely and inadmissible hearsay. The court also determined that it had erred

3

by failing to remove the alternate juror from the jury room during deliberations. It found, however, that the was error harmless:

> Based on the observation of [the alternate], her testimony, and the fact that the jury took less than ten minutes to select a foreperson and reach a verdict, the [c]ourt concludes that [the alternate's] presence during deliberations did not influence the principal jurors and that the [c]ourt's oversight in failing to remove her before deliberations was harmless error.

1. As an initial matter, we question whether Carter has presented a cognizable claim for review. The trial court initially denied the motion for mistrial because, at the time, the parties and the court did not know what the verdict was and/or whether the alternate's presence "matter[ed] one way or the other." In making that ruling, the trial court noted that Carter could pursue the issue in a post-trial motion if he chose to do so. Although Carter renewed his objection "to the jury[,]" he did not object to the trial court's procedure. And he has not argued or demonstrated on appeal that the trial court abused its discretion in determining that post-trial proceedings, rather than a motion for mistrial made when the jury's verdict was unknown, constituted the best avenue for addressing the alternate juror issue. See *Southwestern Emergency Physicians v. Quinney*, 347 Ga. App. 410, 413 (1) (819 SE2d 696) (2018) ("When ruling on a

motion for mistrial, a trial court is vested with broad discretion, and this Court will not disturb the ruling absent a manifest abuse of discretion.") (citation and punctuation omitted).

Instead, Carter's appeal focuses on the denial of his post-trial motion for reconsideration. Through that motion, Carter requested that the trial court "declare a mistrial due to [there] being thirteen (13) persons on the jury who reached the verdict in this case." A mistrial, however, can only be granted before the verdict is rendered; "[o]nce the jury returns its verdict, the trial has ended and the time for granting a mistrial has passed, so a purported mistrial granted after the jury ha[s] returned its verdict result[s] in a void order." *Lester v. State*, 310 Ga. 81, 90 (3) (a) (849 SE2d 425) (2020), disapproved of in part on other grounds by *Clark v. State*, 315 Ga. 423, 435 (3) (b) n.16 (883 SE2d 317) (2023).

"The proper vehicle for [Carter's] alternate-juror claim was a motion for new trial[,]" rather than a motion for reconsideration seeking a post-trial declaration of a mistrial. *Lester*, 310 Ga. at 91 (3) (a). Carter did not file a motion for new trial. And the relief that he now seeks — the grant of a mistrial after the jury returned its verdict — would be void. See id. at 90 (3) (a).

2. But even if the procedure Carter used could be construed as valid, he is still not entitled to relief. Our Constitution requires that "[a] trial jury . . . consist of 12 persons[,]" except under specified circumstances, when the General Assembly can provide for a different number of jurors. Ga. Const. Art. I, § I, Para. XI (b). With respect to civil cases in state courts, the legislature generally authorizes a jury of six persons. See OCGA § 15-12-122 (a) (1). When the claimed damages exceed a certain level, however, a party may demand — as defendant Davis did in this case — a jury of 12. See OCGA § 15-12-122 (a) (2).

Although nothing in OCGA § 15-12-122 authorizes a 13-person jury, the Civil Practice Act permits a court to impanel one or two alternate jurors who can "replace jurors who become or are found to be unable or disqualified to perform their duties." OCGA § 9-11-47 (b). An alternate who has not replaced a regular juror may be discharged prior to deliberations or, if not discharged, must be kept "separate and apart from the regular jurors until the jury has agreed upon a verdict." Id. As the trial court recognized, it failed to follow the proper procedure here. The question is whether that error resulted in harm.

Our case law has not addressed this alternate juror issue in the civil context. The issue has, however, arisen in criminal cases. Similar to OCGA § 9-11-47 (b), OCGA § 15-12-171 provides that, during felony jury trials, once a case is submitted to the jury for deliberation, alternates who have not been discharged shall be kept "separate and apart from the regular jurors, until the jury has agreed upon a verdict." Construing this provision, our Supreme Court has determined that "[t]here is a rebuttable presumption of harm to the defendant if an alternate juror sits in on the jury's deliberations over the defendant's objections." *Lester*, 310 Ga. at 91 (3) (b). To rebut this presumption, the State must demonstrate that the alternate's presence in the jury room did not influence the verdict. See id. at 93 (3) (b). The "ultimate question of influence on the verdict may be answered if a trial court finds that the State met its burden of showing that no juror was influenced by an alternate juror's presence and the record supports that the finding is not clearly erroneous." Id.

The operative language in the criminal and civil statutory provisions governing alternate jurors is almost identical. And in both the criminal and civil context, an alternate juror who improperly enters the jury room is a "third party [or] a stranger to the jury[.]" *Johnson v. State*, 235 Ga. 486, 493 (6) (220 SE2d 448) (1975),

disapproved of in part on other grounds by *Lester*, 310 Ga. at 93 (3) (b). We thus see

no reason to apply a different analysis when addressing a violation of OCGA § 9-11-47

(b). The trial court's error in allowing the alternate juror to join the jury during

deliberations created a rebuttable presumption of harm to Carter, who objected to the

presence of 13 individuals in the jury room. To rebut this presumption, the defendants

offered the testimony of the alternate, who asserted that she took no part in the

proceedings, cast no vote, did not speak, and was not questioned about her presence.

The trial court explicitly found the alternate's testimony credible. It further

determined, based on the alternate's testimony and reserved demeanor, as well as the

speed at which the jury reached its verdict, that she did not influence the jurors,

rendering her presence harmless.

On appeal, Carter urges us to reverse because the defendants failed to present

admissible evidence from the 12 regular jurors as to whether the alternate juror

influenced their verdict. Certainly, evidence from these jurors might have aided the

trial court. But this is not a case in which the only information about the alternate's

participation came from one member of the jury, who may not have known whether

the alternate interacted with other members. Compare *Bullock v. State*, 150 Ga. App.

8

824, 826 (2) (258 SE2d 610) (1979) (jury foreman's statement that alternate did not participate in deliberations failed to establish that "none of the jurors were influenced in any way by the alternate's presence"). On the contrary, the alternate testified that she did not engage with anyone during deliberations, participate in the discussion, or cast a vote, and she indicated that she remained "quiet as a mouse" during the proceedings. Moreover, as the trial court noted, the jury selected a foreman and reached a verdict in less than ten minutes, restricting any opportunity the alternate might have had to influence the jurors.

Given these circumstances, we cannot find that the trial court clearly erred in deeming the alternate's presence in the jury room harmless. See *Lester*, 310 Ga. at 93 (3) (b) ("an alternate's participation in deliberations is one type of evidence — and potentially a significant type of evidence — that is relevant to the question of influence"). Carter, therefore, was not entitled to a mistrial on this ground. See *Stubbs v. State*, 315 Ga. App. 482, 485-486 (4) (727 SE2d 229) (2012) (trial court does not

abuse its discretion in denying a motion for mistrial where the error upon which the motion was based is harmless).

*Judgment affirmed. Dillard, P. J., and Senior Judge C. Andrew Fuller, concur.*